[No. B173506. Second Dist., Div. Seven. June 28, 2005.]

NILDA ROOS et al., Plaintiffs and Respondents, v.
ERIC RED, Defendant and Appellant.

COUNSEL

Horvitz & Levy, David M. Axelrad, David S. Ettinger; Doherty & Catlow and John Doherty for Defendant and Appellant

Brandon Baum and Carlos A. Lloreda, Jr., for Plaintiffs and Respondents.

OPINION

**WOODS, J.**—Eric Red appeals from a judgment entered upon a verdict in favor of respondents, Nilda Roos and Wilma Baum, on their respective complaints against Red for wrongful death. Before trial respondents filed a motion in limine requesting the court apply the doctrine of collateral estoppel to factual findings made by the federal bankruptcy court in a discharge proceeding involving the parties. The bankruptcy court specifically found respondents' wrongful death claims were not discharged by Red's petition for bankruptcy because the claims were the result of Red's willful and malicious conduct. The trial court here granted the motion in limine, and thus, precluded Red from contesting the issue of liability on the wrongful death claims in front of the jury. On appeal Red claims the trial court erred in giving the bankruptcy court's findings collateral estoppel effect because doing so: (1) violated a federal bankruptcy statute (28 U.S.C. § 1411), which preserved his right to a jury trial on wrongful death claims; and (2) did not comport with fairness and sound public policy. We disagree. Red has not convinced us 28 United States Code section 1411 precludes the application of the well-established doctrine of collateral estoppel in this context or that the application of the doctrine was unfair or unsound. Consequently, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

**Wrongful Death Claims.** About 6:00 p.m. on May 31, 2000, Red was driving his sport utility vehicle (SUV) and struck another vehicle stopped at a red light on Wilshire Boulevard in Santa Monica.[1] After pushing the car in front of his into the intersection, Red's SUV crossed opposing lanes of traffic,

---

[1] The facts concerning the collision are taken from the memorandum opinion of the bankruptcy court.

veered off the road and crashed through the front doors of a billiards pub. The SUV came to a stop when it hit the bar inside the pub. Two patrons of the pub, the adult sons of respondents Nilda Roos and Willa Baum, died as a result of the collision. Immediately after the collision, Red picked up a piece of broken glass and attempted to cut his throat.

In June 2000, respondent Roos filed a wrongful death action against Red. Respondent Baum filed her claim in May 2001 and both actions were consolidated in July 2001.

In October 2001, Red, who had briefly relocated to Texas,[2] filed for bankruptcy protection in the United States Bankruptcy Court for the Western District of Texas. Red sought to discharge all of his debts (including the claims filed in the tort actions stemming from the collision) by operation of law. Red also sought and received a stay of the state court wrongful death actions. Respondents appeared in the bankruptcy proceedings and asked the bankruptcy court to lift the stay so that the wrongful death actions could proceed in the California state court. Red opposed the request arguing to the bankruptcy court: "[T]here will be a presentation of evidence apparently that this [bankruptcy] Court will be asked to weigh regarding whether there was any intent here. . . [¶] So it's on that basis, Your Honor, we—that we ask you to use the equitable discretion the Court has to deny the request for relief from stay. And if there is a petition filed to establish a non-dischargeable debt, let the facts be presented here, let this Court hear whether there's a basis for anything."

The bankruptcy court denied the respondents' request. In turn, respondents filed complaints in the bankruptcy proceedings to determine the discharge-ability of their claims against Red and to object to the discharge. Specifically they alleged their claims were debts "for willful and malicious injury by the debtor" and were thus not subject to discharge in bankruptcy pursuant to 11 United States Code section 523(a)(6).

The parties conducted discovery in preparation for a trial in the bankruptcy court on respondents' complaints.[3] In Red's pretrial brief, among the issues he listed for the court's determination were whether: (1) the May 31, 2000,

[2] Red "moved" to Texas shortly before he filed for bankruptcy, and within three months after filing for bankruptcy protection, returned to California. The bankruptcy court suspected Red's brief relocation to Texas was for the purpose of filing bankruptcy in a forum inconvenient to the plaintiffs in the state court action.

[3] The parties took a total of eight depositions and exchanged written discovery.

collision was the result of a voluntary and intentional act on Red's part; (2) Red intended to cause harm to the patrons of the pub; and (3) respondents had met their burden of proof and shown by a preponderance of the evidence Red acted willfully and maliciously in causing the collision.

In November 2002, the matter proceeded to a one-day bench trial in the bankruptcy court. During the trial evidence from percipient and expert witnesses was presented. Red introduced evidence from seven witnesses, offered 32 exhibits, and testified on his own behalf.

The contest in the trial court centered on the cause of the collision. Red contended the collision was the result of his unintentional and involuntary acts. He claimed he suffered from an episode of syncope (i.e., a brief loss of consciousness caused by a temporary loss of oxygen to the brain) and therefore he was unconscious from the moment his SUV hit the car on Wilshire Boulevard until it came to rest inside the pub. He stated he had suffered from several prior incidents of loss of consciousness, though he admitted that he did not tell anyone about them at the time they occurred.

Respondents claimed the accident, which occurred on the one-year anniversary of Red's failed marriage, was the result of his depressed mental state caused by distress over his personal and financial problems. They also presented a medical expert witness who testified Red's behavior and circumstances surrounding the collision did not support a finding of syncope.

The parties presented inconsistent eyewitness testimony; some witnesses stated that they saw Red upright, awake and alert during the incident. Two witness supported Red's version, testifying Red's eyes were closed and that he was leaning towards the right. At the end of the presentation of evidence, the parties submitted written closing arguments to the court and the matter was taken under submission.

On February 4, 2003, the bankruptcy court issued its opinion. The court concluded respondents' claims were not discharged under 11 United States Code section 523(a)(6). The court determined the collision was the result of Red's voluntary and intentional actions; Red intended to harm the patrons of the pub; and respondents had met their burden to prove that the injuries resulted from Red's intentional and malicious conduct. The bankruptcy court found Red's defense of loss of consciousness incredible and unproved. The bankruptcy court concluded: "Mr. Red was conscious and alert and intention-

ally jammed his foot onto the accelerator . . . crashed through the front doors of the billiards pub at a speed approaching 35 mph, [and] killed two people—and that all of this occurred because of a fit of uncontrollable rage on the part of Mr. Red . . . ."

Red filed an appeal of the bankruptcy court's decision in the federal district court.[4] While the appeal was pending, Red filed a motion in the bankruptcy court requesting a stay pending the appeal. The court denied the stay. But during the hearing on the stay, the court made comments indicating a belief that the state court wrongful death action would proceed to trial and that Red would "have an opportunity to convince a jury in the state of California that he was right . . . ."[5]

In April 2003, this case was returned to the active calendar in the superior court. Prior to trial, respondents filed a motion in limine requesting the trial court give the bankruptcy court's findings in the dischargeability proceeding collateral estoppel effect in the wrongful death actions. Specifically they requested that in view of the bankruptcy court's conclusion Red had acted willfully and maliciously in causing the accident, Red should not be allowed to relitigate his liability for the injuries.

Red opposed the motion arguing collateral estoppel should not apply because: (1) the issues in the bankruptcy proceeding were not identical to those at issue in the wrongful death action; (2) the matter was not "fully and fairly" litigated in the bankruptcy court because respondents' medical expert was not qualified to give his opinion, the bankruptcy judge was biased against him, and Red had located a new witness who did not provide evidence in the bankruptcy trial; (3) he had no right to a jury trial in the bankruptcy trial and thus application of collateral estoppel would deprive him of his constitutional right to a jury trial; and (4) application of collateral estoppel would be unfair, contrary to public policy and would not further the purposes of the doctrine.

The trial court granted the motion in limine, ruling Red could not contest the issue of liability and ordered that the jury trial be limited to the issue of

---

[4] The district court affirmed the bankruptcy court's decision. The Fifth Circuit Court of Appeals also affirmed, and Red's request for en banc review was denied. (*In re Red* (5th Cir. 2004) 96 Fed.Appx. 229.)

[5] Respondent Roos's bankruptcy counsel make a similar comment: "If Red has to proceed in the state court action, he will be provided in that setting an opportunity to present evidence in his defense. [¶] In fact, the net result of the [bankruptcy] court's order is merely to state what action may continue. Due process will be served, and the Debtor [Red] will have his day in court."

damages. After a brief trial,[6] the jury returned verdicts of $512,328.69 for respondent Roos and $500,000 for respondent Baum.

Red filed a motion for a new trial, requesting a new trial and stay pending the outcome of (then still pending) appeals of the bankruptcy court order in the federal court. The court denied the motion.

Red timely appealed from the underlying judgment.

## DISCUSSION

### I. Standard of Review

Among the several points of contention in this appeal is whether the standard of appellate review governing a decision to apply collateral estoppel is de novo or an abuse of discretion. Some case law discusses the trial court's exercise of *discretion* in deciding to allow the "offensive" use of collateral estoppel. (E.g., *Sandoval v. Superior Court* (1983) 140 Cal.App.3d 932, 942 [190 Cal.Rptr. 29].) Such authority suggests the appellate court should give deference to the lower court's decision. The predominate view, however, is the trial court's application of collateral estoppel is reviewed de novo. (See *Groves v. Peterson* (2002) 100 Cal.App.4th 659, 667 [123 Cal.Rptr.2d 164]; *Campbell v. Scripps Bank* (2000) 78 Cal.App.4th 1328, 1333.) Here the facts determining whether the trial court properly applied collateral estoppel are uncontested, and thus application of the doctrine is a question of law to which we apply an independent standard of review.[7]

### II. The Trial Court Did Not Err in Applying Collateral Estoppel

On appeal Red asserts the trial court erred in giving the bankruptcy court's dischargeability factual findings collateral estoppel effect to preclude him from contesting liability on the wrongful death claims. First, Red points out collateral estoppel applies only where the parties had a "full and fair" opportunity to litigate in the prior action. He claims he did not have a full or fair chance to litigate because the factual findings in the bankruptcy court were made by a judge rather than a jury—a circumstance, according to Red, that directly contravenes 28 United States Code section 1411(a), which expressly preserves the right to a jury trial in state court on the wrongful

---

[6] Red indicated he would waive his right to a jury trial on damages. However, respondents requested the damage issue be heard by a jury.

[7] In any event, the appropriate standard of review is not dispositive in this appeal. We reviewed the lower court's actions (and affirmed them) under the least deferential standard of review; thus even if we had applied the more deferential abuse of discretion standard, the result would not have changed.

death claims (the Right to a Jury Trial and 28 United States Code section 1411(a) Contention). Second, Red claims application of the collateral estoppel was unfair and did not satisfy the public policy reasons underlying the doctrine (the Fairness Exception). Our analysis of these contentions begins with a review of the legal principles governing collateral estoppel and the related concept of res judicata.

█ "The doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. Public policy and the interest of litigants alike require that there be an end to litigation." (*Citizens for Open Access Etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1065 [71 Cal.Rptr.2d 77].) The doctrine precludes parties or their privies from relitigating a *cause of action* that has been finally determined by a court of competent jurisdiction. This aspect of res judicata has traditionally been referred to as "res judicata" or "claim preclusion."

█ Res judicata also includes a broader principle relevant here and commonly referred to as "collateral estoppel" or "issue preclusion." Under this principle an *issue* necessarily decided in prior litigation may be conclusively determined as against the parties or their privies in a subsequent lawsuit on a different cause of action. (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828–829 [88 Cal.Rptr.2d 366, 982 P.2d 229].) "Thus, res judicata does not merely bar relitigation of identical claims or causes of action. Instead, in its collateral estoppel aspect, the doctrine may also preclude a party to prior litigation from redisputing *issues* therein decided against him, even when those issues bear on different claims raised in a later case. Moreover, because the estoppel need not be mutual, it is not necessary that the earlier and later proceedings involve the identical parties or their privies. Only the party *against whom* the doctrine is invoked must be bound by the prior proceeding." (*Ibid.*)

█ Collateral estoppel applies when (1) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication, (2) there was a final judgment on the merits in the prior action and (3) the issue necessarily decided in the prior adjudication is identical to the one that is sought to be relitigated. (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1201 [108 Cal.Rptr.2d 471, 25 P.3d 670].)

In addition to these factors, and especially where collateral estoppel is applied "offensively" to preclude a defendant from relitigating an issue the defendant previously litigated and lost, the courts consider whether the party against whom the earlier decision is asserted had a "full and fair" opportunity to litigate the issue. (*Parklane Hosiery Company, Inc. v. Shore* (1979) 439 U.S. 322, 332–333 [58 L.Ed.2d 552, 99 S.Ct. 645]; *Kremer v. Chemical Construction Corporation* (1982) 456 U.S. 461, 480–481 [72 L.Ed.2d 262, 102 S.Ct. 1883]; *Sutton v. Golden Gate Bridge, Highway and Transportation District* (1998) 68 Cal.App.4th 1149, 1157 [81 Cal.Rptr.2d 155].)

■ To that end, the courts have recognized that certain circumstances exist that so undermine the confidence in the validity of the prior proceeding that the application of collateral estoppel would be "unfair" to the defendant as a matter of law. (*Kremer v. Chemical Construction Corporation*, supra, 456 U.S. at p. 481 [" 'Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation' "].) Such "unfair" circumstances include a situation where the defendant had no incentive to vigorously litigate the issue in the prior action, "particularly if the second action is not foreseeable." (*Securities Exchange Commission v. Monarch Funding Corporation* (2d Cir. 1999) 192 F.3d 295, 304; see *Parklane Hosiery Company, Inc. v. Shore, supra*, 439 U.S. at p. 330.) Another such circumstance occurs when the judgment in the prior action is inconsistent with previous judgments for the defendant on the matter. (*Parklane Hosiery Company, Inc. v. Shore, supra*, 439 U.S. at pp. 330–331.) Finally, application of collateral estoppel is unfair where the second action "affords the defendant procedural opportunities[8] unavailable in the first action that could readily cause a different result." (*Id.* at p. 331.) With these legal principles in mind, we turn to Red's contentions on appeal.

## A. Right to a Jury Trial and 28 United States Code Section 1411(a)

Preliminarily we note Red *does not* contest that he was a party in the bankruptcy proceedings, that the bankruptcy court order was final on the merits, or that the issue necessarily decided in the bankruptcy proceeding was identical to the one he sought to relitigate in the wrongful death action.[9]

---

[8] The only examples of "procedural opportunities" cited in *Parklane* were: (1) where the defendant was forced to defend the first action in an inconvenient forum not of the defendant's choosing; or (2) where in the first action the defendant was "unable to engage in full scale discovery or call witnesses." (*Parklane Hosiery Company, Inc. v. Shore, supra*, 439 U.S. at p. 331, fn. 15.)

[9] As respondents correctly point out, to prevail in the bankruptcy discharge proceeding they were required to prove Red acted "willfully and maliciously" in causing the injuries. (See 11 U.S.C., § 523(a)(6) ["A discharge under . . . this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another . . ."].) Proof of "willful and malicious injury" requires (1) a wrongful action, (2) done intentionally,

Instead he claims that he was denied a "full and fair" opportunity to litigate the issue in the bankruptcy court. He argues that applying collateral estoppel was improper because the state court wrongful death action afforded him a "procedural opportunity," that is, a right to a jury trial, unavailable in the federal bankruptcy court discharge proceeding.

■ This argument fails for several reasons. First, an additional procedural opportunity is meaningful only where it "could readily cause a different result" in the action. (*Parklane Hosiery Company, Inc. v. Shore, supra,* 439 U.S. at p. 331.) We are not convinced that a jury acting as the trier of fact on the liability issues would readily have reached a different result than the judge in the bankruptcy proceeding. As the Supreme Court observed in *Parklane Hosiery,* "the presence or absence of a jury as factfinder is basically a neutral, quite unlike, for example, the necessity of defending the first lawsuit in an inconvenient forum." (*Id.* at p. 332, fn. 19.) The jury hearing the same facts and essentially the same evidence and arguments concerning Red's mental state and causation, should reach the same conclusion as a judge assessing those matters.

■ This notwithstanding, the more fundamental failing in Red's argument is that the right to a jury trial "poses no insurmountable barrier to applying collateral estoppel." (*Securities Exchange Commission v. Monarch Funding Corporation, supra,* 192 F.3d at p. 304.) Notably absent from *Parklane Hoisery*'s list of "procedural opportunities" (missing from first action which would undermine the application of collateral estoppel in a subsequent action) is the right to a jury trial. Indeed, the Supreme Court in *Parklane Hoisery* expressly held that the application of offensive collateral estoppel did not violate the Seventh Amendment right to a jury trial. (*Parklane Hosiery Company, Inc. v. Shore, supra,* 439 U.S. at pp. 336–338.) Thus, the *Parklane Hosiery* court concluded the unavailability of a jury trial in the first proceeding did not preclude the application of collateral estoppel in the second action. (*Ibid.*) The California State Supreme Court has likewise concluded that notwithstanding the state constitutional jury trial guarantee, the lack of a jury trial on contested factual issues in one proceeding does not preclude application of collateral estoppel in a subsequent proceeding. (*People v. Sims* (1982) 32 Cal.3d 468, 484, fn. 13 [186 Cal.Rptr. 77, 651 P.2d 321] ["any right to a jury trial . . . is only a right to submit to a jury issues of fact which are triable. When issues of fact have been conclusively resolved

---

(3) which necessarily causes injury, and (4) is done without just cause or excuse. (*In re Jercich* (9th Cir. 2001) 238 F.3d 1202, 1208–1209.) In contrast, California's wrongful death statute required a showing that Red acted with a less culpable mental state—negligence. (See Code Civ. Proc., § 377.60.)

against [a party in a prior action], application of collateral estoppel to take those issues from the jury does not violate the . . . right to a trial by jury"]; *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 344 [272 Cal.Rptr. 767, 795 P.2d 1223].)

Red recognizes *Parklane Hosiery* and *Sims*[10] resolve the question of whether the right to a jury precludes the application of collateral estoppel against him. Red, nonetheless, asserts application of collateral estoppel in this case violated 28 United States Code section 1411(a)[11]—a statute which he asserts guarantees his right to a jury trial in the wrongful death action irrespective of the bankruptcy court's findings in the discharge proceedings or the doctrine of collateral estoppel.[12]

Section 1411(a) provides, in pertinent part: "[T]his chapter and title 11 do not affect any right to a trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim." (§ 1411(a).)

Red construes section 1411(a) as providing that no bankruptcy court order or finding can be used to deny a party a right to a jury trial in a wrongful death action. He concludes that when the court applied collateral estoppel here and thus precluded him from contesting liability in the wrongful death action, the court effectively used the bankruptcy court's findings to deprive him of his right to a jury trial in direct contravention of section 1411(a). Red concludes the trial court should have denied respondents' motion in limine because section 1411(a) is an insurmountable barrier to collateral estoppel in this case.

While at first glance Red's interpretation of section 1411 and its implication on the doctrine of collateral estoppel appears to follow logically from the language of the statute, closer scrutiny of the provision does not support his view. Red cites no legal authority for his reading of section 1411(a). Nor does a review of the legislative history of the section, or relevant bankruptcy legal authority serve to legitimize his interpretation.

---

[10] While recognizing this court is bound by it, Red disagrees with the principle announced in *Sims*, citing instead to a Texas Court of Appeals decision (*Trapnell v. Sysco Food Services, Inc.* (Tex. App. 1992) 850 S.W.2d 529, 543–546) as authority for the proposition "application of collateral estoppel here violates California Constitution's jury trial right."

[11] Hereinafter referred to as section 1411.

[12] Red failed to raise the application of section 1411(a) in the trial court. While this results in a waiver of the argument on appeal, we nonetheless address the merits because they concern only legal issues.

**Background of Section 1411.** In 1978 Congress extensively revised the federal bankruptcy laws and expanded the jurisdiction of the bankruptcy courts. Under the 1978 Bankruptcy Act disputes tangentially related to bankruptcy that previously could only be adjudicated in state or federal district courts, now could be heard in bankruptcy court. To ensure litigants' (nonbankruptcy law) rights to a jury trial would not be lost in such cases, Congress provided for the preservation of jury trial rights by allowing bankruptcy courts to conduct such trials. (See 28 U.S.C. §§ 1471 & 1480 [repealed 1984]; Gibson, *Jury Trials in Bankruptcy: Obeying the Commands of Article III and the Seventh Amendment* (1988) 72 Minn. L.Rev. 967, 983 (Gibson).)[13]

When the United States Supreme Court in *Northern Pipeline Const. Co. v. Marathon Pipeline Co.* (1982) 458 U.S. 50, 84–87 [73 L.Ed.2d 598, 102 S.Ct. 2858], held unconstitutional the jurisdictional grant of authority to the bankruptcy courts under the 1978 act, it did so on the basis that article III powers were unconstitutionally conferred on non-article-III bankruptcy judges. The *Marathon* court reasoned the broad grant of jurisdiction violated article III because it permitted bankruptcy judges who lacked tenure and salary protections mandated by article III, to hear and decide state common law actions without the parties' consent. (*Northern Pipeline Const. Co., supra,* at p. 87.) While *Marathon* did not expressly hold that the bankruptcy judge's authority under the 1978 act to conduct jury trials rendered the jurisdictional provisions of the 1978 act unconstitutional, the decision cast doubt on the authority of bankruptcy judges to conduct such trials.[14] Courts subsequently have interpreted *Marathon* to mean that it is unconstitutional for bankruptcy judges to conduct jury trials. (See, e.g., *In re American Energy* (Bankr. D.N.D. 1985) 50 B.R. 175, 181.)

In response to *Marathon,* Congress quickly passed the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the 1984 Amendments). The 1984 Amendments retained the non-article-III stature of bankruptcy judges but reduced their authority over judicial proceedings to comply with

---

[13] Title 28 United States Code section 1480 (hereinafter section 1480) as enacted in 1987, provided in pertinent part: "[T]his chapter and title 11 do not affect any right to a trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979." The legislative history of section 1480 suggests Congress enacted the jury trial provision to ensure that notwithstanding the expansion of the bankruptcy court's jurisdiction, the 1978 act would not infringe on the parties' preexisting rights to a jury trial prior to the effective date of the law. Nothing in the language of section 1480 or its legislative history indicates Congress intended to expand the right to a jury trial or create new jury trial rights. (See Gibson, *supra,* 72 Minn. L.Rev. at pp. 983–984.)

[14] With regard to such jury trials at least one bankrupcty court has concluded: "[b]ut for *Marathon,* there would be no question but that the bankruptcy court had the necessary statutory authority to conduct jury trials." (*In re Adams, Browning & Bates Ltd.* (Bankr. E.D.N.Y. 1987) 70 B.R. 490, 496.)

article III's apparent requirement that the essential functions and attributes of judicial power be vested in article III courts. (Gibson, *supra*, 72 Minn. L.Rev. at p. 992.)

Among various alterations to the law, Congress eliminated the 1978 act's broad jury trial provision, section 1480 and replaced it with section 1411, which limited jury trial rights to wrongful death and personal injury actions. The legislative history of section 1411 shows its drafters, like their predecessors who drafted section 1480, intended merely to preserve the right to a jury trial only insofar as it existed under nonbankruptcy law; they did not intend to expand or create a new source of jury trial rights. (See 130 Cong. Rec. S7618-19 (daily ed. June 19, 1984) [Senator Heflin explained the intent of jury trial provision as: "[W]here a . . . party would have a right to a jury trial on an issue of fact pursuant to Federal or State law absent the application of bankruptcy laws, this [jury trial provision] ensures that such rights remain intact" and that the provision was intended "to maintain the status quo" and "not to alter rights to jury trials which might have existed under State or Federal law prior to 1978"].)

Furthermore, Congress preserved jury trial rights in the 1984 Amendments for personal injury and wrongful death actions not because it was constitutionally mandated under *Marathon* or the Seventh Amendment but because of the strong lobbying efforts of the personal injury tort bar. (See *In re Ice Cream Liquidation, Inc.* (Bankr. D.Conn. 2002) 281 B.R. 154, 161.) Congress also recognized that personal injury and wrongful death tort claimants, unlike most other creditors in bankruptcy proceedings, had not voluntarily associated with the debtor. (See Braugh, *Personal Injury and Wrongful Death Claims in Bankrupcty: The Case for Abstention* (1995) 47 Baylor L.Rev. 151, 159.) Thus, section 1411 was designed with the protection and interests of tort claimants/creditors rights, rather than debtors, in mind. "The objective of [section 1411] is to prevent a debtor from taking away the protections provided under state law from creditors who depend on them the most." (Bibler, *The Status of Unaccrued Tort Claims in Chapter 11 Bankruptcy Proceedings* (1987) 61 Am. Bankr. L.J. 145, 179.) According to Senator Heflin: "Congress never intended that the filing of a bankruptcy petition by a debtor act as an escape hatch from jury trials." (130 Cong. Rec. S7619 (daily ed. June 19, 1984).)[15]

---

[15] Congress further safeguarded the interests of personal injury and wrongful death creditors by providing that bankruptcy courts have no jurisdiction to liquidate (or to conduct proceedings affecting liquidation) of personal injury or wrongful death claims. (See 28 U.S.C. § 157(b)(2)(B) and (O). The 1984 Amendments also deprive bankruptcy courts of jurisdiction to conduct wrongful death or personal injury trials. (See 28 U.S.C. § 157(b)(5) [requiring personal injury tort claims to be tried in the district court].)

Finally, this court found no evidence in the legislative history that Congress intended section 1411 to guarantee a jury trial in every wrongful death or person injury tort case, even where the doctrine of collateral estoppel would otherwise (under nonbankruptcy law) preempt the right to a jury trial.

■ Our detour into bankruptcy law clarifies several matters that inform our interpretation of section 1411(a). First, it is apparent from the legislative history section 1411(a) does not create any additional procedural or substantive rights to a jury trial. Thus, Red's interpretation of section 1411(a) is too expansive. The statute preserves the right to a jury trial in a wrongful death action *only* to the extent that the right to a jury trial existed under the applicable nonbankruptcy law (i.e., under the Constitution or relevant statute).[16] And as discussed elsewhere above, the Federal and California state constitutional jury trial guarantees give way to the application of collateral estoppel.[17]

■ Second, nothing in the case law, legislative history or statutory scheme indicates that section 1411 operates to supplant the well-established doctrine of collateral estoppel. As Red points out, the bankruptcy court had no authority to conduct a jury trial in the discharge proceeding (e.g., *In re Hashemi* (9th Cir. 1997) 104 F.3d 1122, 1124). Similarly the bankruptcy court would not have had jurisdiction to liquidate the wrongful death claim or conduct a trial in the action. (28 U.S.C. § 157 (b)(2) & (5); see *Grogan v. Garner* (1991) 498 U.S. 279, 283–284 [112 L.Ed.2d 755, 111 S.Ct. 654]; *In re Santos* (Bankr. D.N.J. 2004) 304 B.R. 639, 647.)[18] But the limitations imposed upon the bankruptcy court's authority and jurisdiction and the inherent distinctions between bankruptcy discharge proceedings and wrongful death claims are simply beside the point.

---

[16] The right to a jury trial in a wrongful death action stems from the California Constitution, article I, section 16, and Code of Civil Procedure section 592 (in a civil action for "injuries" an "issue of fact must be tried by a jury"). (See *DeCastro v. Rowe* (1963) 223 Cal.App.2d 547, 552 [36 Cal.Rptr. 53].)

[17] In our view, the statutory right to a jury trial in Code of Civil Procedure section 592 does not foreclose the application of collateral estoppel here. Section 592 guarantees a jury trial only for "issues of fact." Where, however, a competent trier of fact in a prior proceeding has conclusively determined the factual issues, then no "triable" issue of fact remains for jury's resolution. (See *Dixon v. Superior Court* (1994) 30 Cal.App.4th 733, 746 [36 Cal.Rptr.2d 687] [in absence of triable question of fact, no right to a jury trial exists].)

[18] Nonetheless, bankruptcy courts sometimes make determinations that relate to the underlying merits of tort claims. (See *In re Chateaugay* (Bankr. S.D.N.Y. 1990) 111 B.R. 67, 78; *In re Aquaslide N' Dive Corp.* (Bankr. 9th Cir. 1987) 85 B.R. 545, 548.) Both *Aquaslide* and *Chateaugay* construed 28 United States Code section 157 to allow the bankruptcy court to make dispositive rulings on personal injury claims as part of its jurisdiction over allowance and disallowance of claims.

 Red has not shown that section 1411 or any other bankruptcy provision precludes a state court presiding over a wrongful death action from giving preclusive effect to bankruptcy findings on issues identical to those raised in a state wrongful death case and actually litigated and determined in the bankruptcy proceeding. (See *Martin v. Martin* (1970) 2 Cal.3d 752, 759, 765 [87 Cal.Rptr. 526, 470 P.2d 662] [bankruptcy court's interpretation of parties' property settlement agreement as well as the order the debt was not subject to discharge given collateral estoppel effect in subsequent state court action between the parties]; *Levy v. Cohen* (1977) 19 Cal.3d 165, 172–174 [137 Cal.Rptr. 162, 561 P.2d 252] [bankruptcy court order releasing the defendants from liability for certain obligations of limited partnership was res judicata in state court action concerning the defendants' liability partnership debts].) Full faith and credit must be given to an order of the federal court and such an order has the same effect in the courts of this state as it would have in a federal court. (See *Lumpkin v. Jordan* (1996) 49 Cal.App.4th 1223, 1232 [57 Cal.Rptr.2d 303] ["Where dispositive factual issues are actually litigated and resolved in the federal action, the losing party is estopped to relitigate those issues in a subsequent state action"]; *Levy v. Cohen, supra*, 19 Cal.3d at pp. 172–173.)

 In sum, we are not convinced the trial court's order giving the bankruptcy court's findings preclusive effect on the issue of liability in the wrongful death actions violated section 1411. The bankruptcy code did not provide Red with any additional right to a jury trial that could block the application of the doctrine of collateral estoppel in state court. Section 1411 recognizes that any right to a jury trial arose from nonbankruptcy law, and Red has failed to demonstrate that such jury trial rights were offended by the application of collateral estoppel. Furthermore Red offers no other argument to show he was denied a "full and fair" opportunity to litigate in the bankruptcy proceedings.[19] As a result we conclude the trial court properly found the threshold requirements for collateral estoppel.

### B. *Fairness Exception.*

Notwithstanding Red's arguments with respect to section 1411, he also claims the application of collateral estoppel was unfair and did not satisfy the public policy purposes underlying the doctrine. We do not agree.

 Even where minimum requirements for collateral estoppel are established, the doctrine will not be applied "if injustice would result or if the public interest requires that relitigation not be foreclosed. [Citations.]"

---

[19] Red does not deny he had a full and fair opportunity to conduct discovery and present his evidence and arguments in the bankruptcy proceeding. Moreover because he chose the venue he cannot complain that he had to defend the action in an inconvenient forum.

(*Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 902,[160 Cal.Rptr. 124, 603 P.2d 41].) Thus the court must also consider whether the application of collateral estoppel in a particular case will advance the public policies which underlie the doctrine. (*Younan v. Caruso* (1996) 51 Cal.App.4th 401, 407 [59 Cal.Rptr.2d 103].) "The purposes of the doctrine are to promote judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system and to protect against vexatious litigation." (*Ibid.*)

Red asserts these purposes were not served in this case. First, he claims it is unfair to apply the doctrine when the bankruptcy judge and Roos's bankruptcy counsel both made comments in the bankruptcy proceeding which indicated a belief that Red would have an opportunity to contest liability in the wrongful death action. In view of these comments, Red asserts that maintaining the "integrity of the judicial system" required the trial court to reject the application of collateral estoppel.

 We are not persuaded such remarks undermine the policy objectives of the doctrine. The bankruptcy court's comments were made *after* it issued the opinion in the dischargeability proceeding. There is no evidence the bankruptcy court considered such matters when it issued the dischargeability findings or that if it did, that those beliefs played any role in the court's findings. In any event, even if the bankruptcy court based its findings on the assumption Red would have the chance to relitigate intent and causation in the state court action, that assumption, as this opinion concludes is erroneous. Collateral estoppel may apply even where the issue was wrongly decided in the first action. " 'An erroneous judgment is as conclusive as a correct one.' " (*Martin v. Martin, supra,* 2 Cal.3d at p. 763, quoting *Panos v. Great Western Packing Co.* (1943) 21 Cal.2d 636, 640 [134 P.2d 242].)

Red also argues it is unfair to apply collateral estoppel because it did not avoid "vexatious or repetitive litigation." He maintains the wrongful death trial would have been significantly different than the bankruptcy proceedings, not only because of the jury's presence, but also because he had an "important new witness" who did not testify in the bankruptcy proceedings. Red asserts that after the bankruptcy proceeding he was finally able to locate and depose the driver of the car he rear-ended in the intersection. He claims that if called to testify, the other driver would provide evidence consistent with Red's theory of the case (i.e., that Red was unconscious and acted involuntarily.)

■ The problem with this contention is the existence of "new evidence" normally does not bar the application of collateral estoppel. (See *Robert J. v. Leslie M.* (1997) 51 Cal.App.4th 1642, 1647–1648 [59 Cal.Rptr.2d 905] [court denied relitigation of same claim notwithstanding fact that new evidence was unavailable in earlier proceeding].) In any event, Red has not demonstrated that this evidence is "new" or was "previously unavailable."[20] Moreover, the other driver's testimony goes to the weight of the evidence supporting Red's version of the case; it does not establish a previously undiscovered defense theory nor does it result in a change in the parties legal rights. "An exception to collateral estoppel cannot be grounded on the alleged discovery of more persuasive evidence. Otherwise there would be no end to litigation." (*Evans v. Celotex Corp.* (1987) 194 Cal.App.3d 741, 748 [238 Cal.Rptr. 259].)

In sum, in our view the integrity of the judicial system was served, judicial economy was promoted and vexatious litigation was avoided by the trial court's decision. Application of collateral estoppel in this case gave credit to factual findings made by a competent court, acting within the scope of its jurisdiction, and in a forum where the parties were afforded a fair and full opportunity to present their evidence and arguments and appellate review of adverse rulings was available.

Finally, we observe Red may have obtained a jury trial in state court on the liability issues, if he had joined in, rather than opposed the respondents' request for relief from the bankruptcy stay. If the case had gone that procedural route, Red would have been no worse off. To that end, had Red prevailed in the wrongful death action (i.e., convinced the jury he lacked the requisite "negligent" mental state to be liable on wrongful death claims) the bankruptcy discharge proceeding would have been unnecessary. If on the other hand, he had lost in the state court, he nonetheless would have been able to litigate the dischargeability of the claims in the bankruptcy court. Instead Red vigorously opposed the request for a relief from stay and the case took a different route. Red asked the bankruptcy court to "determine the facts." The bankruptcy court did just that. Although Red was disappointed with the result, neither his disappointment nor any other argument he has presented to this court, convinces us that the trial court's decision to give the facts as determined by the bankruptcy court collateral estoppel effect was unfair or contrary to the law.

---

[20] It appears the other driver was known to Red before the bankruptcy proceedings. As a result of the collision the other driver filed an action and obtained a default judgment against Red.

## *DISPOSITION*

The judgment is affirmed. Costs on appeal are awarded to respondents.

Perluss, P. J., and Johnson, J., concurred.

A petition for rehearing was denied July 26, 2005, and appellant's petition for review by the Supreme Court was denied September 21, 2005. George, C. J., did not participate therein.