Filed 7/15/25  Sharma v. Ventura County Medical Center CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| NAVEEN SHARMA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>VENTURA COUNTY MEDICAL CENTER, et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B329496<br>(Super. Ct. No. 56-2017-00501303-CU-PO-VTA)<br>(Ventura County) |

Naveen Sharma, M.D. appeals the judgment, entered after a non-jury trial, in favor of respondents Ventura County, Ventura County Medical Center (VCMC), and its Medical Executive Committee (MEC).  He alleges that respondents retaliated against him for his whistleblowing complaints by revoking his medical staff privileges in violation of Health & Safety Code section 1278.5 (hereafter, section 1278.5).  Appellant contends the trial court erred when it concluded his complaints did not qualify as "whistleblowing" within the meaning of section

1278.5. He further contends the trial court erred when it concluded he was collaterally estopped to litigate the question whether he met the standard of care while practicing medicine at VCMC and when it excluded evidence relating to the standard of care, excluded the administrative record from his peer review proceeding, and excluded the deposition testimony of VCMC's chief executive officer.

We conclude appellant did not present "a grievance, complaint, or report" regarding "suspected unsafe patient care and conditions" within the meaning of subdivisions (a) and (b)(1)(A) of section 1278.5. The concerns he expressed were either already well known to respondents or unrelated to the quality or safety of patient care. As a consequence, appellant's statements were not "whistleblowing" within the meaning of section 1278.5 and cannot serve as the basis for a retaliation claim under the statute. We need not decide appellant's remaining contentions regarding the collateral estoppel effect of the peer review proceeding or the trial court's evidentiary rulings. We affirm.

*Facts*

Appellant was granted temporary staff privileges and began working at VCMC in July 2016. At the time, VCMC had a significant backlog of unread cardiac studies that needed to be read by a cardiologist. According to VCMC's director cardiology, Dr. Amita Dharawat, appellant was hired, in part, to help clear that backlog. Appellant contends that he was unaware of the backlog before he began work and that the extent of the backlog was unknown to the administration of VCMC before he raised concerns about it in December 2016. The trial court found he complained within the first month he worked at VCMC.

By September 2016, coworkers at VCMC were communicating concerns regarding appellant's work to Dr. Dharawat. In the fall of 2016, one of the hospitalists decided that he would avoid calling for a cardiac consultation when appellant was on call because he disagreed with appellant's frequent use of a particular medication that was associated with increased mortality. These and other issues were discussed at a cardiology department meeting which appellant attended on December 1, 2016.[1] The next day, appellant received an email from the hospital's medical records department about delinquent charting that he needed to complete within the week to avoid suspension. Other doctors at VCMC received the same email.

Appellant met with Dr. Brian Wong, Chief Medical Officer at VCMC, on December 5, 2016. During this meeting, appellant contends he complained to Dr. Wong about Dr. Dharawat and the backlog of unread cardiac studies. He also reported to Dr. Wong that he had heard the hospital may have billed for unread cardiac studies and that physicians who read

---

[1] The trial court summarized these concerns in its statement of decision: "1) scheduling of Dr. Sharma's procedures so that staff would know where he is for coverage situations; 2) remote access to the electronic medical record; 3) reinforcing Cardiology Department hours and being on time, regardless of what work was done the day prior; 4) having a more set schedule for Dr. Sharma's PCI clinic on Wednesdays and cases on Thursdays; 5) taking patients to Community Memorial Hospital ('CMH') versus St. John's Regional Medical Center ('SJRMC') 'cath labs' since CMH was closer to VCMC despite Dr. Sharma's preference take patients to SJMRC; and 6) decreasing Dr. Sharma's elective procedures during Dr. Dharawat's maternity leave to allow 'all hands on deck' at VCMC for impatient consult coverage."

certain nuclear stress tests had not shown appellant they met the requirements to be named on the hospital's radioactive materials license. Dr. Wong agreed that appellant complained about Dr. Dharawat during this meeting but denied that he raised the other issues.

*Peer Review Proceedings*

Concerns about appellant's practice persisted in December 2016 and January 2017. On December 30, appellant was notified that one of his cases was the subject of a pending peer review. He was invited to submit a written response before the February 21, 2017 meeting of the Medical Committee. After receiving this notice, appellant emailed Dr. Wong regarding what he described as a hostile work environment created by Dr. Dharawat.

In mid-February, six of appellant's cases were sent for review to AllMed, an external physician reviewer. The MEC received the AllMed report about two weeks later. Appellant was notified that same day that the report had been received. He was invited to review it in the Medical Staff Office.

The MEC discussed the AllMed report and other concerns relating to appellant at its meeting the next day. At that meeting, appellant reviewed the first AllMed report and was informed that he could make an appointment to review other medical records because his access to the electronic medical records system would be turned off. The MEC voted unanimously to summarily suspend appellant's clinical privileges. Appellant was notified of the suspension the next day.

Appellant communicated directly with AllMed the next day, twice by email and once by phone. He identified himself as "'Brian Young,'" from the "'Ventura County Health

4

Plan,'" and attempted to get a copy of the AllMed report. Appellant created two deceptive email addresses to receive the AllMed report. AllMed did not send it to appellant. He was, however, able to review the report the next day, in a meeting at VCMC. VCMC later gave him a copy of the report.

Appellant spoke at the next MEC meeting and distributed written material supporting his work, including external reviews of three cases by outside experts, letters from other physicians, excerpts from medical records and journals and his curriculum vitae. He was also asked whether he had misrepresented his identity to AllMed. Appellant lied twice about this incident. The third time he was asked about it, appellant admitted he had done so and that his conduct was unethical. The MEC also reviewed written statements about appellant from several members of the medical staff. After the meeting, the MEC voted unanimously to continue appellant's summary suspension and recommended that his clinical privileges and medical staff membership be revoked.

Appellant requested a hearing to challenge the summary suspension. The MEC voted to rescind its recommendation to revoke his staff privileges pending further investigation. During March and April 2017, the MEC reviewed additional reviews of appellant's cases by outside experts. It invited appellant to submit a written statement in response to the MEC's charges and to appear at an MEC meeting in May 2017. Appellant did not request to review additional medical records or submit a written statement in response to the MEC's concerns. Appellant later declined to meet with the MEC. After reviewing the additional materials, the MEC again voted

unanimously to recommend revocation of appellant's clinical privileges and medical staff membership.

*Judicial Review Committee*

Appellant exercised his right to have the MEC's decision reviewed by the Judicial Review Committee (JRC). In connection with this review, the parties stipulated to a hearing officer and to the five members of the committee. Both parties were represented by counsel and the hearing was reported by court reporters. The evidentiary hearing occurred over 19 days and included 14 witnesses and hundreds of documents.

The JRC issued a written decision in which it found there were valid concerns about appellant's professionalism, that the treatment he provided in one case fell below the standard of care, and that he showed a lack of integrity when he misrepresented his identity to AllMed. It found the remaining charges were not established by a preponderance of the evidence and that the MEC had failed to carry its burden to prove "by a preponderance of the evidence that there was an imminent danger to the health of any individual." As a consequence, the JRC found the summary suspension and recommended revocation of appellant's privileges were not reasonable and warranted.

*Appeal to the Governing Board*

VCMC appealed to the JRC's decision to its Governing Board. After reviewing the record before the JRC, the Governing Board concluded that its factual findings were supported by substantial evidence but that the JRC had applied an incorrect standard. VCMC's bylaws did not require a finding that the doctor at-issue then posed an imminent danger to the health of an individual. Instead, the bylaws provide that a

6

doctor's privileges could be suspended or revoked if VCMC's failure to act "'may result in an imminent danger to the health of any individual . . . .'" The charges found established by the JRC were, the Governing Board concluded, sufficient to meet that standard. Appellant's unethical conduct in misrepresenting his identity to AllMed was an aggravating factor supporting the decision to revoke his privileges. The Governing Board concluded that the MEC's decision to revoke appellant's privileges and staff membership was reasonable and warranted.

*Writ Petition*

Appellant filed a petition in the superior court for writ of administrative mandate. He alleged that VCMC suspended and revoked his medical staff privileges in retaliation for his whistleblowing complaints regarding the cardiac study backlog and perceived irregularities in the hospital's nuclear medicine license and billing practices. Appellant further alleged that he was not provided a fair hearing by the Governing Board and that the Governing Board applied the wrong legal standard.

The superior court denied the writ in a written ruling. It found that the JRC's factual findings were supported by substantial evidence but agreed with respondents and the Governing Board that those findings supported the decision to suspend and then to revoke appellant's medical staff privileges. The court also rejected appellant's contention that proceedings before the Governing Board were unfair, concluding instead that the Governing Board's procedures were consistent with VCMC's bylaws and were fair. "There was a noticed process and an independent review by the JRC and then by the Board. Petitioner fully raised his concerns and was afforded an opportunity to hear

7

and cross-examine witnesses and to present evidence . . . ," including evidence that a witness was biased against him.

*Complaint for Damages*

Appellant filed his original complaint for damages in September 2017, after the MEC had recommended the revocation of his privileges and before the JRC hearing. Trial in this matter, however, occurred in December 2022, after the Governing Board affirmed the revocation of his privileges and after the denial of his writ petition. The trial court granted a motion in limine to exclude evidence that appellant met the standard of care in his practice at the hospital. It also excluded expert opinion testimony offered by appellant to refute medical criticisms of his practice. The trial court concluded testimony regarding the standard of care would be irrelevant to the question of whether he was retaliated against for whistleblowing complaints.

The trial court found that appellant's conduct in misrepresenting his identity to AllMed was unethical. VCMC's bylaws allow for the revocation of a physician's privileges if the physician's conduct was unethical. Appellant's "deceitful conduct," the trial court concluded, supported respondents' decision to revoke his medical staff privileges.

The trial court further found that the decision to recommend revocation of appellant's privileges was "reasonable and fair" in light of the evidence of his unethical conduct and evidence that he endangered "the health and safety of patients at VCMC." Appellant's negligent conduct was "judicially established," the trial court found, in the writ proceedings.

Finally, the trial court concluded the complaints appellant raised in his meeting with Dr. Wong did not qualify as "whistleblowing" and that there was no causal connection

8

between those complaints and the revocation of his privileges. The complaints did not constitute whistleblowing because they were either not related to patient safety or were already known to respondents.  Appellant's complaints were not causally related to the revocation of his privileges because, the trial court found, members of the MEC relied on appellant's unethical conduct and the opinions of outside experts who concluded his practice endangered patient safety.  The trial court entered judgment in favor of respondents.

### Contentions

Appellant contends the trial court erred when it gave collateral estoppel effect to the peer review proceedings because they were not "of sufficient judicial character."  Appellant further contends the trial court erred when it excluded evidence relating to the standard of care, when it excluded the administrative record of the peer review proceedings and when it excluded portions of the deposition testimony of VCMC's chief executive officer.  Finally, appellant contends the trial court erred when it found that his complaints did not constitute whistleblowing within the meaning of section 1278.5.  Because we conclude appellant's complaints were not whistleblowing, we do not reach his remaining contentions.

### Standard of Review

We review de novo the trial court's conclusions of law, including its conclusion that appellant's complaints are not whistleblowing within the meaning of section 1278.5.  (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191; *Roos v. Red* (2005) 130 Cal.App.4th 870, 878.)  We review the trial court's findings of fact for substantial evidence.  (*Symons*

9

*Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th 583, 597.)

*Discussion*

Appellant testified that, at the December 5, 2016, meeting with Dr. Wong, he reported his concerns that the hospital had a large backlog of unread cardiac studies. He also told Dr. Wong that he was "hearing" some of the unread studies may have been billed as read. Finally, appellant reported that some of the cardiologists who were reading nuclear stress tests had not confirmed to him that they met the requirements for being listed on the hospital's radioactive materials license.

The trial court found these complaints or reports did not qualify as whistleblowing because respondents were aware of the backlog and appellant's concerns about billing and licensing did not relate to patient care. Appellant contends the trial court erred because there is no requirement that complaints relate only to previously unknown issues and because his other complaints could relate to the quality of patient care. We are not persuaded.

Section 1278.5 prohibits retaliation based on a grievance, complaint or report related to the quality of patient care or to patient safety. The concerns appellant claims to have expressed do not meet this threshold. The trial court correctly concluded that appellant's reports were not "whistleblowing" within the meaning of section 1278.5.

The statute declares, "it is the public policy of the State of California to encourage patients, nurses, members of the medical staff, and other health care workers to notify government entities of suspected unsafe patient care and conditions." (§ 1278.5, subd. (a).) In support of that policy, the statute prohibits discrimination or retaliation "against a patient,

10

employee, member of the medical staff, or other health care worker" because that person "[p]resented a grievance, complaint, or report to the facility . . . or to any other governmental entity." (*Id.*, subd. (b)(1)(A).) Section 1278.5 does not "explicitly limit the type of 'grievance, complaint, or report' for which retaliation is prohibited to one involving concerns about the quality of patient care. However, such a limitation is implicit in other provisions of the statute." (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 667, fn. 6.) Thus, to demonstrate retaliation in violation of the statute, "a plaintiff must show that he or she (1) presented a grievance, complaint, or report to the hospital or medical staff (2) regarding the quality of patient care and (3) the hospital retaliated against him or her for doing so." (*Alborzi v. University of Southern California* (2020) 55 Cal.App.5th 155, 179.)

Here, appellant contends he reported to Dr. Wong that he "was hearing" about billing irregularities. As the trial court found, this concern is not related to the quality of patient care or patient safety. Billing practices implicate the hospital's financial condition and contractual relationships, not patient care or safety.

Appellant claims also to have reported that some physicians who read nuclear stress tests had not confirmed to him that they met the technical requirements to be listed on the hospital's radioactive materials license. There is no evidence – and appellant does not claim to have reported – that any of these physicians were unqualified to read the tests. Indeed, the record established that three physicians read nuclear stress tests at the hospital during the relevant period and that each physician was qualified to do so. These physicians did not handle, inject or

11

dispose of radioactive materials, so none of them were required to be named on the license. In the absence of evidence that appellant reported even a suspicion of incompetence or improper handling of radioactive materials, substantial evidence supports the trial court's finding that this report was unrelated to patient care or safety.

The remaining issue appellant contends he reported or complained about was the backlog of unread cardiac studies. While this circumstance could relate to patient care or safety, it was also well known to respondents at the time. The trial court found this complaint did not qualify as whistleblowing because the hospital already knew about it and was taking steps to address it. Appellant contends the trial court erred because there is no requirement that he be the first person to report the issue.

Our Supreme Court has not expressly resolved the question whether, for purposes of section 1278.5, an alleged whistleblower must be the first person to report a particular concern. However, in the context of an analogous section of the Labor Code,[2] our Supreme Court held "a report of unlawful activities made to an employer or agency that already knew about the violation is a protected 'disclosure' . . . ." (*People ex rel. Garcia-Brower v. Kolla's Inc.* (2023) 14 Cal.5th 719, 721 (*Garcia-Brower*).) The court acknowledged that the term "disclose" means revealing new information as well as making information

_____

[2] Labor Code section 1102.5, subdivision (b) prohibits employers from retaliating against employees for "disclosing information" about unlawful activities either to the employer, to a government agency or to law enforcement, (*Garcia-Brower, supra,* 14 Cal.5th at pp. 720-721.)

12

"'openly known'" or opening information "'up to general knowledge.'" (*Id.* at p. 725.)

There is no requirement that the employee seeking protection be the first person to report information if the report makes information "openly known" or "open to general knowledge." Extending protection to an employee who corroborates reports made by others, for example, furthers the purpose of the statute because corroborating reports may make the recipient "more likely to ameliorate violations, and less able to sweep them under the rug . . . ." (*Garcia-Brower, supra,* 14 Cal.5th at p. 730.)

Here, substantial evidence supports the trial court's factual finding that respondents were well aware of the backlog before appellant met with Dr. Wong. Dr. Wong testified the backlog had existed for years and both he and Dr. Dharawat testified that appellant was hired, in part, to help clear it. In other words, the backlog was already "'openly known'" or "'open[ed] up to general knowledge'" before appellant made his report. (*Garcia-Brower, supra,* 14 Cal.5th at p. 725.) There is no evidence that he added any new information or contributed to respondents' knowledge of, or sense of urgency about addressing the backlog. To the contrary, the record establishes that respondents informed appellant of the backlog and were in the process of clearing it when he made his report. Under these circumstances, the trial court correctly concluded that appellant's statements to Dr. Wong do not qualify as a whistleblowing report within the meaning of section 1278.5.

Finally, a claim for whistleblower retaliation requires evidence of causation. "The common law legal dynamics of retaliation statutes require a prima facie showing of a *causal*

13

*connection* between an adverse action and the complaint that allegedly engendered the retaliation. [Citation.] Absent such a showing, the retaliation claim is unviable." (*Armin v. Riverside Community Hospital* (2016) 5 Cal.App.5th 810, 829.) This required causal link is broken where the employer demonstrates "that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity." (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 718 [retaliation claim under Labor Code § 1102.6]; see also *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 211 [Gov. Code, § 12940].)

Here, substantial evidence demonstrated that appellant created deceptive email accounts and misrepresented his identity to AllMed staff, by phone and email, in an effort to get a copy of the AllMed report. He also lied to the MEC when questioned about this conduct. Appellant admitted these actions were "unethical" and "'very wrong.'" Respondents' medical staff bylaws provide that unethical conduct is a basis for formal corrective action, including the suspension or revocation of staff privileges. Like the trial court, we conclude appellant failed to prove a causal connection between his report and the revocation of his staff privileges because appellant's unethical conduct is an independent and sufficient basis for the adverse employment action.

### *Conclusion*

The trial court correctly concluded appellant's complaints or reports did not constitute "whistleblowing" within the meaning of section 1278.5 and were not causally connected to the revocation of his staff privileges. It is not necessary for us to reach appellant's remaining contentions.

The judgment is affirmed.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.

YEGAN, Acting P. J.

We concur:

BALTODANO, J.

CODY, J.

Jeffrey G. Bennett, Judge

Superior Court County of Ventura

_____


Fenton Jurkowitz Law Group and Nicholas D. Jurkowitz, Dennis E. Lee, David D. Wagmeister, for Plaintiff and Appellant.
Cole Pedroza and Kenneth R. Pedroza, Cassidy C. Davenport; Clinkenbeard, Ramsey, Spackman & Clark and Hugh S. Spackman, Maureen E. Clark, for Defendants and Respondents.