Filed 12/23/15  Tikosky v. Yehuda CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JACOB TIKOSKY, | B255834 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LC057468) |
| v. | |
| YORAM YEHUDA et al., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Frank Johnson, Judge.  Reversed.

Law Office of Lee David Lubin and Lee David Lubin for Defendant and Appellant.

Law Office of Michael N. Berke and Michael N. Berke for Plaintiff and Respondent.

_____

Defendant Yoram Yehuda appeals from a postjudgment order of the Los Angeles Superior Court denying his motion to compel plaintiff Jacob Tikosky, his judgment creditor, to acknowledge a partial satisfaction of the judgment. We reverse the postjudgment order.

## Background[1]

In July 2003, following a court trial involving partnership dissolution and related claims, Tikosky obtained judgment against Yehuda for $223,460, plus interest.[2] Following an appeal, a revised judgment was entered in Tikosky's favor on October 11, 2015, for $643,577, including interest, attorneys' fees, and costs. Tikosky obtained judgment for $284,000 on the same date against the appellate surety who had guaranteed Yehuda's payment of the original judgment; he then settled with the appellate surety for payment of a portion of that obligation, $137,500. In January 2009, the superior court compelled Tikosky to acknowledge partial satisfaction of his judgment against Yehuda in that amount.[3]

On May 13, 2008, the trial court granted Tikosky's motion for an order permitting his judgment against Yehuda to be enforced against the "Boris Drive" property, a residential parcel held in the name of an intervivos trust but found to be community property of Yehuda and his wife. The court ordered the property sold to satisfy Tikosky's judgment.

---

[1] Although few (if any) of the underlying events are disputed by the parties, the court's task of reviewing and reciting the relevant evidence and record is hindered by the failure of the parties' briefs to provide record citations for many factual statements, and their frequent citations only to their own trial court recitals rather than to any primary source. (See Cal. Rules of Court, rule 8.204(a)(1)(C).) And their scarce record citations lack identification by tab number, making the inclusion of tabs in the appendix unhelpful.

[2] The dollar figures recited in this opinion are not at issue, and should be understood to be approximate.

[3] References to the superior court are to the Los Angeles Superior Court case No. LC057468.)

2

In February 2009, Yehuda filed a Chapter 7 bankruptcy petition in the Southern District of Florida.[4]

On May 18, 2009, by stipulation with Yehuda, Tikosky obtained a bankruptcy court order lifting the automatic stay to permit Tikosky "to exercise any and all rights he might have to satisfy some or all of his judgment against [Yehuda] from a sale of [the Boris Drive property] . . . ."  According to Yehuda, the email negotiations between the parties' counsel reflect their agreement that Yehuda would not oppose sale of the Boris Drive property, and Tikosky would enforce his judgment only against that property and would accept the sale proceeds as full satisfaction of the judgment.[5]

Also in May 2009, Tikosky filed an adversary action in the Florida bankruptcy proceeding.  On June 25, 2009, he filed a proof of claim in the bankruptcy for $729,531, purportedly then the amount of the Yehuda judgment.  On August 14, 2009, after extensive email negotiations and agreement with Yehuda, Tikosky sought and obtained from the Florida bankruptcy court an order clarifying its earlier relief-from-stay order, stating that Tikosky's right to satisfy his judgment from the Boris Drive property "is solely in rem and not in personam."  The order also permitted Tikosky to obtain a state-court order for post-judgment attorneys' fees and costs, to be enforced against the Boris Drive property—but not to recover from any other Yehuda bankruptcy assets without further order from the bankruptcy court.

On October 6, 2009, the superior court awarded Tikosky post-judgment attorneys' fees and costs totaling $212,184.

On January 28, 2010, the superior court ruled on Tikosky's motion for determination of the priority of the liens on the Boris Drive property.  The court held that the Boris Drive property was encumbered by liens in the following priority and principal

---

[4] There apparently were a number of bankruptcy proceedings initiated by Yehuda, his wife, or a family trust; we find it unnecessary to separately identify or distinguish among them.

[5] Tikosky's application to sell the property had represented to the court that it was appraised at $3.2 million.

amounts: First, an equitable lien in the amount of $647,149 in favor of JP Morgan Chase Bank, successor in interest to the lender, Washington Mutual Bank; second, the abstract of judgment for Tikosky's July 2003 judgment of $223,460 against Yehuda; third, the amended abstract of judgment for Tikosky's October 11, 2005 revised judgment against Yehuda, which had increased his original judgment by $643,500, then on December 8, 2008, reduced it by $137,500 (the payment by Yehuda's appellate surety). The fourth and sixth liens, for $1,650,000 and $500,000, respectively, were for additional deeds of trust in favor of Washington Mutual Bank; the fifth lien was a $500,000 deed of trust in favor of another lender.[6]

The Boris Drive property foreclosure sale was set by the court for March 18, 2010. But on that date before the sale, Chicago Title Insurance Company (Chicago Title) "paid [Tikosky] the value of his judgment lien" (per his $792,531 abstract of judgment), admittedly in order to prevent the property's sale.[7]

On July 27, 2010, Tikosky filed an amended proof of claim in the Yehuda bankruptcy, in the amount of $349,684.[8] On September 30, 2010, Tikosky confirmed to Chicago Title: (1) that Chicago Title had paid Tikosky $792,531 for the assignment of

---

[6] Tikosky had argued in the superior court (unsuccessfully) that his judgment liens should have priority over the $647,149 Washington Mutual lien, because Washington Mutual (and its title insurer, Chicago Title Insurance Company), had failed to obtain priority over the judgment lien when it loaned an additional $1.65 million on the property. Yehuda appealed (unsuccessfully) from the priority-setting order, contending that the Washington Mutual liens should all be senior to Tikosky's judgment lien. (*Tikosky v. Yehuda* (Mar. 17, 2011) 2011 Cal. App. Unpub. LEXIS 1953.)

[7] Chicago Title was the insurer of the Boris Drive title securing Washington Mutual's post-judgment loans. The discrepancy between the figures variously identified as the judgment lien's amount, $729,530 and $792,531 (perhaps reflecting accrued interest at different times), has no significance in this appeal.

[8] According to the supporting documentation, the $349,684 claim consisted of the October 2009 fee and cost award of $212,184, plus $137,500 Tikosky claimed he would be obligated to reimburse Yehuda's appellate surety from any recovery Tikosky might receive from Yehuda.

4

his abstracts of judgment against Yuhuda, and as a result of that assignment and payment Tikosky waives enforcement of those liens against the Boris Drive property; (2) that on March 18, 2010, Tikosky received $792,531 from Chicago Title, "which represents the entire amount due and owing to fully satisfy" the 2003 and 2005 judgment liens on the Boris Drive property; and (3) that Tikosky will not oppose or object to Yehuda's appeal from the lien-priority order.[9]

Yehuda moved for summary judgment in the Tikosky adversary proceeding in early 2011, contending that after Tikosky's $792,531 assignment of his judgment liens to Chicago Title, he lacked standing as a creditor to prosecute the adversary proceeding.[10] Tikosky argued that he remained creditor, because two elements of his amended claim remained to be adjudicated: (1) the $212,184 attorney-fee and cost order of October 6, 2009; and (2) Yehuda's liability to him for his contingent liability to Yehuda's appellate surety for the $137,500 the surety had paid him, payable from any recovery Tikosky might receive from Yehuda. Tikosky also specifically advised the court that his right under the Yehuda judgment lien "has been resolved" by his March 18, 2010 assignment of that lien to Chicago Title in exchange for the $792,531 payment.[11]

On March 17, 2011, the bankruptcy court in the adversary proceeding denied Yehuda's summary judgment motion, finding that the Florida bankruptcy court's relief-

---

[9] Tikosky's counsel later explained that Chicago Title had paid $792,531 for the lien's assignment because its insured (Washington Mutual) had refinanced the property after the judgment against Yehuda was recorded, "so now they [Washington Mutual and Chicago Title] have $1.65 million into this property," $1 million of which was junior to the intervening judgment liens.

[10] The Tikosky's adversary action had been transferred to the Central District of California in December 2009; in June 2011, the entire Yehuda bankruptcy proceeding was transferred; and on August 2, 2013, the court dismissed the bankruptcy and the adversary proceeding.

[11] Yehuda argued that because Tikosky had only in rem rights under the Boris Drive liens, he was not entitled to collect from the estate beyond what he might receive from that lien, although he would be entitled to collect the additional attorney-fee award from any Boris Drive proceeds that remain after satisfaction of senior liens.

5

from-stay order "does not resolve the claim" against the estate, and that Yehuda had failed to conclusively establish Tikosky's lack of standing as a creditor, or that the $212,000 claim for fees and costs was included in the lien assignment to Chicago Title. The court's written decision found that "[Tikosky] has no standing to prosecute his claim for $792,531.21 arising out of the judgment because it was assigned to Chicago Title," however his claim for $212,184 plus interest either remained to be adjudicated, or at least Yehuda had not shown that it did not. The court therefore found the documentation insufficient to establish Tikosky's lack of standing as a creditor.

On February 21, 2012, Yehuda moved to disallow Tikosky's $792,531 claim. Five weeks later, on March 28, 2012, Tikosky filed another amended claim in the bankruptcy action, this one in the amount of $1,142,215, apparently comprised of the $792,531 abstract of judgment, the $212,180 post-judgment award for fees and costs, and the contingent liability of $137,500, claimed by Tikosky to be owed to Yehuda's appellate surety.[12]

Also on March 28, 2012, Tikosky's counsel filed his opposition to Yehuda's motion to disallow his claim in the bankruptcy. The supporting declaration and an attached nine-page agreement, entered into the previous day between Tikosky and Chicago Title, identified the March 18, 2010 assignment to Chicago Title as the purchase of an "equitable interest" in the Yehuda judgment (rather than an assignment of the judgment or lien). The declaration represented to the court that Chicago Title had "paid the value of plaintiff's judgment lien pursuant to the Judgment Lien recorded in January 2006" in order to prevent the foreclosure sale of the Boris Drive property set for that day. And it told the court that "now that the Title Company has paid Tikosky," his contingent obligation to repay $137,500 to Yehuda's appellate surety has arisen.

---

[12] We have located no copy of the March 28, 2012 bankruptcy court claim in the appellate record. Tikosky has identified it as an exhibit to Yehuda's motion to compel the judgment's partial satisfaction but that exhibit is not the March 28, 2012 claim. It is the July 27, 2010 amended claim for $348,684, comprised of the $212,180 and $137,500 amounts, which does not include any claim for payment of the $792,531 judgment.

6

On August 16, 2012, the bankruptcy court held (without identifying which of the filed claims it was addressing) that "there is no factual basis by which to disallow Tikosky's claim," and that the judgment lien's assignment to Chicago Title "did not erase Tikosky's right to pursue his claim" against Yehuda, because "the Judgment has not been fully satisfied. . . ." "[P]ortions of the judgment were resolved" by the $137,500 settlement with Yehuda's surety and the $729,530 purchase agreement with Chicago Title; Tikosky and Chicago Title "can decide how to split the proceeds of the Judgment Lien after collection."

The bankruptcy court ordered dismissal of the Yehuda bankruptcy and the adversary action on May 30, 2013 and June 11, 2013, respectively. Only collection from the Boris Drive property remained; and because the estate's equity in the Boris Drive property was less than the outstanding liens, the bankruptcy estate lacked any substantial interest in that two-party dispute between Tikosky and Yehuda.

On November 6, 2013, Yehuda made a demand to Tikosky for a partial satisfaction of judgment in the amount of $792,531 as of March 18, 2010—the date of Tikosky's assignment to Chicago Title in exchange for its $792,531 payment to Tikosky. On November 26, 2013, Tikosky formally demanded payment of $33,750 from Fidelity National Title Insurance Company (Chicago Title's parent company) upon close of a then-pending escrow for a "short sale" of the Boris Drive property.[13]

On February 24, 2014, the trial court denied Yehuda's motion to compel Tikosky to file a partial acknowledgement of the judgment in the amount of $792,531 as of March 18, 2010. Yehuda argued at the hearing that the bankruptcy court's allowance of Tikosky's claim cannot be res judicata of the partial-satisfaction issue, because the property had not yet been sold at the time of the bankruptcy court's earlier ruling; and that the later sale of the property entitled him to a partial satisfaction of the judgment, because Tikosky had received the full value of his lien in exchange of its assignment to Chicago Title. Tikosky argued, to the contrary, that the March 18, 2010 assignment, was

---

[13] On January 9, 2014, Tikosky acknowledged a partial satisfaction of the Yehuda judgment in the amount of $33,750.

not a sale of the judgment or lien, but only of an "equitable interest in the proceeds of the collection of the judgment . . ."; and that the bankruptcy court had necessarily so ruled when it denied Yehuda's objections to Tikosky's claim.

The court expressly agreed with Tikosky's arguments, and on that basis declined to rule on the motion's merits. It found that "the issue of the defendant's right to claim a partial satisfaction of the plaintiff's judgment based on the payment made by Chicago Title Company was considered by [the bankruptcy judge], in ruling upon and denying the objection of the defendant to the plaintiff's proof of claim [in the bankruptcy case]. The court finds the ruling of [the bankruptcy court] to be res judicata and therefore precludes the relief sought by the defendant in his motion herein."

On April 18, 2014, Yehuda filed a timely appeal from the trial court's February 24, 2014 denial of his motion to compel Tikosky to file an acknowledgement of the judgment's partial satisfaction, in the amount of $792,531 as of March 18, 2010.

## Discussion

### I.    Appealability

Postjudgment orders denying (or granting) motions to compel acknowledgment of a satisfaction of judgment are appealable orders. (Code Civ. Proc., § 904.1, subd. (a)(2); *Horath v. Hess* (2014) 225 Cal.App.4th 456, 463.)

### II.    The Trial Court Erred In Denying Yehuda's Motion To Compel Tikosky To Acknowledge A Partial Satisfaction Of The Judgment

Tikosky argues (as he did in the trial court) that the doctrine of res judicata governs, because the issue raised by the appeal is the same as that decided by the bankruptcy court when it denied Yehuda's motion for summary judgment in the adversary proceeding, and when it allowed Tikosky's claim. He argues that those rulings actually and necessarily determined that Chicago Title's payment of $792,531 for Tikosky's assignment of an interest in the judgment liens did not constitute a partial satisfaction of his judgment against Yehuda.

8

The trial court agreed, ruling that the issue had been decided by the bankruptcy court, thus binding the trial court as a matter of res judicata. On that ground it denied the motion to compel Tikosky to acknowledge a partial satisfaction of the judgment. The issue here is whether that ruling was error. If the trial court was correct in applying res judicata, its ruling must be affirmed; if it was mistaken, the order must be reversed and the matter remanded to permit a hearing on the merits.

**A. Elements of Claim Preclusion Under the Doctrine of Res Judicata**

The doctrines of res judicata and collateral estoppel ordinarily preclude a party to prior litigation from relitigating an issue that was decided in an earlier proceeding. (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828-829; *Roos v. Red* (2005) 130 Cal.App.4th 870, 879.) "'Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action.'" (*Levy v. Cohen* (1977) 19 Cal.3d 165, 171; *Nathanson v. Hecker* (2002) 99 Cal.App.4th 1158, 1162.) "Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.'" (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.)[14]

To apply here, the doctrines of res judicata and collateral estoppel would require the existence of three elements: (1) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication, (2) there was a final adjudication on the merits in the prior action, and (3) the issue necessarily decided in the prior adjudication is identical to the one that is sought to be relitigated. (*Levy v. Cohen*, *supra*,

---

[14] The circumstances of this case do not require separate discussion or distinction between the overlapping doctrines of res judicata and collateral estoppel. That is because the extent to which a future sale of the Boris Drive property would satisfy Tikosky's judgment was not before the bankruptcy court in February 2014. Under the doctrine of res judicata a judgment "precludes recovery on claims arising prior to its entry, [but] it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." (*Lawlor v. National Screen Service Corp.* (1955) 349 U.S. 322, 328.)

9

19 Cal.3d at p. 171; *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1201; *Roos v. Red*, *supra*, 130 Cal.App.4th at p. 879.)  It is the third of these elements that is in dispute here.

A judgment or order rendered by a federal bankruptcy court is considered final and binding for purposes of res judicata until it is reversed on appeal, or modified or set aside by the rendering court.  (*Levy v. Cohen*, *supra*, 19 Cal.3d at p. 172; *Siegel v. Federal Home Loan Mortg. Corp.* (9th Cir. 1998) 143 F.3d 525, 529-530.)  Therefore, a bankruptcy court's allowance of a claim is a final judgment entitled to res judicata.  (*Ibid.*)

The bankruptcy court refused to disallow Tikosky's claim—in effect, allowing it.  The trial court in this case explained its conclusion that the bankruptcy court's order constituted an adjudication that Chicago Title's payment to Tikosky did not constitute a partial satisfaction of the claim:  "The Court notes that Memorandum of Decision 8/16/12 by Judge Tighe in the bankruptcy court as to the motion to disallow Claim #19, found no basis for denying Tikosky's claim.  Judge Tighe rejected the contention that the agreement between Chicago Title with Tikosky satisfied plaintiff's judgment.  As such plaintiff's contention of res judicata seems correct."

Yehuda contends in this appeal that the trial court was mistaken as to the bankruptcy court's earlier ruling.  He contends that the second and third of the requirements listed above for the application of res judicata—that there had been a final adjudication of the identical claim—were not met:  The bankruptcy court's order did not adjudicate that Chicago Title's $792,531 payment to Tikosky did not satisfy (or partially satisfy) the judgment against Yehuda.

**B.  Standard of Review**

Because the parties do not contest the facts that underlie the res judicata determination, the propriety of the trial court's application of the doctrine is a question of law, subject to independent review.  (*Roos v. Red*, *supra*, 130 Cal.App.4th at p. 878.)  We therefore review the court's application of res judicata de novo.  (*Ibid*.; *Groves v. Peterson* (2002) 100 Cal.App.4th 659, 667.)

10

As the party asserting res judicata, it was Tikosky's burden in the trial court to establish the doctrine's requirements were met—in this case, that the issue previously adjudicated in the bankruptcy proceeding was the same as the issue the trial court was being asked to decide. (*Santa Clara Valley Transportation Authority v. Rea* (2006) 140 Cal.App.4th 1303, 1311.)

### C. Tikosky Failed to Establish in the Trial Court that the Bankruptcy Court's Denial of Yehuda's Objection to His Claim Constituted an Adjudication of the Same Issue Before the Trial Court in This Case

As set forth above, on June 25, 2009, Tikosky had filed a claim in the bankruptcy estate for $729,530. On July 27, 2010, he had filed an amended claim in the amount of $349,684 (comprised of his $212,184 postjudgment fee award and the $137,500 he contended he would owe to Yehuda's appellate surety from any recovery he might receive on the judgment); and a month later his counsel confirmed in writing that as a result of the $792,531 payment by Chicago Title, Tikosky was no longer seeking to enforce the abstract of judgment against the estate. Then, on March 28, 2012, Tikosky again amended his claim against the bankruptcy estate to include the $792,531 abstract of judgment.

### 1. The bankruptcy court's denial of summary judgment in the adversary proceeding did not constitute an adjudication of Yehuda's right to partial satisfaction of Tikosky's judgment.

Tikosky contends that the issue raised by this appeal is the same as that decided by the bankruptcy court's denial of Yehuda's motion for summary judgment in the adversary proceeding. We conclude that it is not.

The controlling circumstances, set forth in the bankruptcy court's denial of summary judgment, are straightforward. Tikosky filed his adversary proceeding on May 16, 2009, alleging his status as a pre-petition judgment creditor, and that Yehuda's bankruptcy discharge should be denied. Yehuda moved for summary judgment, contending that Tikosky's standing as a judgment creditor disappeared when he assigned his judgment to Chicago Title for $792,531.

11

The bankruptcy court explained the parties' contentions and the status of the proceedings. According to the court, Tikosky "does not dispute that he has been paid by Chicago Title with respect to his claim, but does dispute the nature and extent of that payment." Tikosky had assured the court that his claims arising from the "judgment lien orally assigned to Chicago Title" have "been resolved"; but that he remained a creditor because two other elements of his claim remained to be determined: the $212,184 attorney-fee order, and the $137,500 contingent liability to Yehuda's appellate surety. According to Tikosky, "the purported payment from Chicago Title satisfied only [Tikosky's] 'in rem claim,'"—the judgment lien on the Boris Drive property—but that he "is still seeking post-judgment costs of $212,184.40 plus interest," which he contended "was not within the scope of the transaction with Chicago Title." As the court put it at the hearing, "[c]learly, they can't collect the abstract of judgment amount they got from Chicago Title, but their proof of claim asks for $212,184 more that they . . . didn't collect."

On that basis, the court denied the motion for summary judgment: Tikosky "has no standing to prosecute his claim for $792,531.21 arising out of the judgment because it was assigned to Chicago Title"; but his "claim for $212,184.40 plus interest remains, or at least, [Yehuda] has not shown that there is no material dispute of fact as to this amount."

The court's denial of summary judgment thus decided only that Yehuda's showing was insufficient to conclusively establish Tikosky's lack of standing as a creditor. It did not adjudicate that Tikosky's receipt of the payment from Chicago Title for his pre-petition liens on the Boris Drive property did not constitute a partial satisfaction of that judgment (and in fact it indicated the opposite). (*Schulze v. Schulze* (1953) 121 Cal.App.2d 75, 83 [order denying summary judgment based on determination that issues remain to be tried is not res judicata on the merits or lack of merits of any such issue].) For that reason the trial court's denial of Yehuda's motion to compel acknowledgment of a partial satisfaction of judgment cannot be justified on the basis of res judicata arising from the bankruptcy court's denial of summary judgment in the adversary action. (*Levy*

12

*v. Cohen*, *supra*, 19 Cal.3d at p. 171; *Coscia v. McKenna & Cuneo*, *supra*, 25 Cal.4th at p. 1201; *Roos v. Red*, *supra*, 130 Cal.App.4th at p. 879.)

**2. The order disallowing Yehuda's objection to Tikosky's claim did not constitute an adjudication that the $792,531 payment to Tikosky was not a partial satisfaction of Tikosky's judgment.**

The bankruptcy court's August 16, 2012 allowance of Tikosky's claim, also did not adjudicate an issue identical to that sought by Yehuda's superior court motion for a partial satisfaction of the judgment. That ruling therefore does not support the superior court's application of the doctrine of res judicata to deny Yehuda's motion for acknowledgment of the judgment's partial satisfaction.

The bankruptcy court's August 16, 2012 memorandum of decision, denying Yehuda's motion to disallow Tikosky's claim sets forth the status of the events at that time: Tikosky's judgment and amended judgment were secured by liens on the Boris Drive property in the amount of $792,531; the Tikosky's judgment against Yehuda had been partially satisfied in the amount of the surety's $137,500 payment to Tikosky; Chicago Title had paid $792,531 for Tikosky's assignment of an interest of some sort in the judgment or the Boris Drive property lien; and Yehuda had moved on February 21, 2012, to disallow Tikosky's claim against the bankruptcy estate.

The bankruptcy court's August 16, 2012 memorandum of decision, also sets forth Tikosky's contentions with respect to the claim's continuing validity: The claim remained valid even after Chicago Title "purchased Tikosky's rights in the judgment lien," because Tikosky's and Chicago Title's purpose "was to prevent a Sheriff's sale on the Boris Drive Property," by "stop[ping] a pending foreclosure," and "thereby ensuring that Tikosky's Judgment Lien would be preserved." Chicago Title's purchase of an interest in the judgment lien "merely entitles Chicago to a share in the proceeds of the Judgment Lien and does not impede Tikosky from pursuing his claim against Debtor."

13

Yehuda's position, on the other hand, was that by assigning the lien to Chicago Title, Tikosky had released his right to sell the Boris Drive property to enforce the lien.[15]

The bankruptcy court ruled that because the judgment against Yehuda "has not been fully satisfied," the lien's assignment to Chicago Title did not eliminate Tikosky's right to pursue his claim against Yehuda; rather (as Tikosky had assured the court) only "portions of the judgment were resolved" by the payment from Chicago Title and the settlement with Yehuda's appellate surety.[16] Because the judgment was not "fully" satisfied and the rights of creditors to "portions of the judgment" remained to be determined, the court held, Tikosky had continuing standing as a creditor. Allowance of a claim is not the same as payment of the claim. (See March, et al., Cal. Practice Guide: Bankruptcy (The Rutter Group 2014) ¶ 17:42, p. 17-5 ["'Allowance' of a claim does not necessarily mean it will be *paid* from the bankruptcy estate"].) The court made clear its understanding and ruling that whether (and to what extent) the judgment lien included rights to the $212,184 attorney fee award remained unresolved; and "Tikosky and Chicago can decide how to split the proceeds of the Judgment Lien after collection."

This determination (and the court's subsequent dismissal of the bankruptcy, without discharge) may reflect a conclusion that the only remaining dispute was whether Tikosky or Chicago Title would be entitled to the proceeds of a future sale of the Boris Drive property—a dispute that could be resolved in a state-court proceeding, and in

---

[15] Yehuda contended also that the assignment to Chicago Title in order to stop the foreclosure sale exceeded the scope of the bankruptcy court's order permitting relief from the bankruptcy stay in order to sell the property.

[16] Tikosky had represented to the court: "Mr. Tikosky, the plaintiff herein, has 3 different bases of claims in this action: 1) the Abstract of Judgment or judgment lien orally assigned to Chicago Title Insurance Company on March 18, 2010, as clarified by Michael N. Berke's email of April 10, 2010; 2) the attorney's fee order arising from the cost of attorney's fees incurred in another related Bankruptcy matter of this underlying collection matter against the defendant; and 3) a contingent liability issue between the defendant, plaintiff, and [the appellate surety], all of which arose before this bankruptcy was filed. To date the judgment lien matter has been resolved but there remains the 2 additional claims, predating the filing of this bankruptcy, incorporated into the Amended Proof of Claim in July 2010."

14

which the bankruptcy estate had no interest. But the ruling did not result from an adjudication of the issue at issue here: whether Chicago Title's $792,531 payment did or did not constitute a partial satisfaction of the underlying judgment.

If that were not otherwise clear, it is confirmed by the change in circumstances between the August 16, 2012 ruling, and the superior court's February 24, 2014 denial of Yehuda's motion in this case. By the time of the superior court's February 24, 2014 ruling in this case, the underlying facts were not at all the same as they had been when the bankruptcy court had allowed Tikosky's claim. At that time the Boris Drive property remained in the bankruptcy estate; Tikosky had assigned some interest in his judgment or lien to Chicago Title, but that assignment did not eliminate the claim against Yehuda's bankruptcy estate because the judgment remained not "fully" satisfied. But when the superior court ruled on the motion to compel the judgment's partial satisfaction, the Boris Drive property had been sold. Yehuda's counsel explained (and Tikosky's counsel did not dispute) that the Boris Drive property was sold in a short sale after Yehuda's bankruptcy was dismissed, "with the approval of [Tikosky] and Chicago Title, who delivered a release of the abstract of judgment against the Boris Property to escrow so that the short sale could close."[17] According to Yehuda, "[t]he short sale of the Boris property resulted in the accrual of the defendant's right to a partial satisfaction . . . ."[18]

As the bankruptcy court had expressly recognized in its denial of Yehuda's motion to disallow Tikosky's claim, it is the property's eventual sale that would liquidate the judgment lien, entitling Tikosky and Chicago Title to determine "how to split the

---

[17] Yehuda's wife, as record holder of the Boris Drive property, also was required to provide the escrow with a release of lien in order to permit the property's sale.

[18] On January 9, 2014, Tikosky filed an acknowledgment of the judgment's partial satisfaction in the amount of $33,750—apparently the amount Chicago Title's parent company paid Tikosky to release his interest in the lien.

15

proceeds of the Judgment Lien after collection," thereby satisfying Tikosky's judgment against Yehuda in whole or in part.[19]

The question before the superior court in this case therefore was not just whether the judgment lien had been extinguished by Chicago Title's March 18, 2010 purchase of Tikosky's rights in the judgment lien; it was also whether the subsequent sale of the Boris Drive property had satisfied some portion of the judgment—a question that was not before the bankruptcy court at any time.  Res judicata cannot apply when the question decided in the earlier proceeding is not identical to the issue being considered in the later proceeding.  (*Landeros v. Pankey* (1995) 39 Cal.App.4th 1167, 1171; *United States Golf Assn. v. Arroyo Software Corp.* (1999) 69 Cal.App.4th 607, 615; *Zimmerman v. Stotter* (1984) 160 Cal.App.3d 1067, 1074-1075.)  The trial court therefore erred by relying on the bankruptcy court's denial of the motion to disallow Tikosky's claim as res judicata, and by refusing to reach the merits of the motion to compel entry of a partial satisfaction of judgment.

**Conclusion**

The bankruptcy court found that a portion of Tikosky's claim against the estate remained valid in August 2012.  But it did not adjudicate either that his assignment of the judgment lien (or an interest in it) to Chicago Title was not a partial satisfaction of the judgment, or that the Boris Drive property's eventual sale would not satisfy the judgment in whole or in part.  When the superior court later denied the motion to acknowledgment of the judgment's partial satisfaction, the bankruptcy had been dismissed (over Tikosky's objection), apparently because the estate then lacked any equity in the Boris Drive property—and therefore lacked any interest in the property's eventual disposition.  The bankruptcy proceeding's dismissal apparently left Yehuda with his pre-bankruptcy

---

[19] On January 9, 2014, Tikosky filed an acknowledgment of the judgment's partial satisfaction in the amount of $33,750, apparently the amount Chicago Title's parent company paid Tikosky to release his interest in the Boris Drive property lien.

16

interest in the Boris Drive property, subject to the liens of Tikosky and others in shares, controlled by the superior court's priority-fixing order and any valid agreements.[20]

The dismissal of the bankruptcy proceeding without discharge evidences the court's conclusion that Yehuda's estate had no equity in the Boris Drive property to divide or distribute—but it did not discharge any remaining debt Yehuda may have had, or adjudicate the size of the debt that would remain upon liquidation of the Boris Drive property lien. That is the issue raised by Yehuda's motion to compel acknowledgment of a partial satisfaction of the judgment, which is yet to be decided on its merits.[21]

## Disposition

The trial court's February 24, 2014 order, denying the motion to compel Tikosky's entry of a partial satisfaction of judgment is reversed. Appellant shall recover costs on appeal.

NOT TO BE PUBLISHED.


CHANEY, Acting P. J.

We concur:


JOHNSON, J.


LUI, J.

---

[20] Dismissal of a bankruptcy proceeding ordinarily "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case . . . ." (11 U.S.C. § 349, subd. (b)(3).)

[21] The apparent result is that Yehuda's Boris Drive property had generated Chicago Title's $792,521 payment to Tikosky; and Chicago Title had been reimbursed for that payment (either from the proceeds of the property's later sale, or perhaps earlier, by elimination of Chicago Title's potential liability to its insured). Yehuda's judgment creditor therefore obtained the benefit of his judgment lien, but Yehuda has not been credited with satisfaction of the judgment in that amount.