Filed 2/27/24  V&C Investments v. Fusion Hospitality Corp. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| V&C INVESTMENTS, LLC et al., | D081251 |
| Plaintiffs, Cross-defendants and Respondents, | |
| v. | (Super. Ct. No. 37-2019-00057744-CU-BC-CTL) |
| FUSION HOSPITALITY CORPORATION et al., | |
| Defendants, Cross-complainants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Reversed.

Cate Legal Group and Allan Cate for Defendants, Cross-complainants and Appellants.

Jeffrey B. Singer for Plaintiffs, Cross-defendants and Respondents.

Fusion Hospitality Corporation and Denny Bhakta (collectively, Fusion) appeal from a judgment entered against them after an order for judgment on the pleadings in favor of V&C Investments, LLC and Vishal Patel (collectively, Vishal).  In entering judgment, the trial court held that "the whole case hinges on . . . one issue," that that issue was identical to an

issue that had been adjudicated against Fusion in a different lawsuit, and that Fusion should be precluded from relitigating that issue in this lawsuit. Fusion contends the trial court erred in concluding that the issues in the two lawsuits were identical. We agree with Fusion. Hence we reverse the judgment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Two Lawsuits, and the Two Settlement Agreements

The two lawsuits are grounded in disputes that arose between Fusion and members of the Patel family (including Mukesh Patel and Vishal Patel) who dealt with Fusion as investors and/or lenders.

In the first lawsuit (the Mukesh Lawsuit), Mukesh Patel and an affiliate named MP1959 Investment, LLC (collectively, Mukesh) sued Fusion for breach of contract. This lawsuit seemingly resolved, six months later, when Mukesh and Fusion entered into a settlement agreement (the Mukesh Settlement Agreement).[1]

---

[1] Our description of proceedings in the Mukesh Lawsuit is drawn from the following documents on file with the superior court in that lawsuit (*Mukesh Patel v. Fusion Hospitality Corporation*, Super. Ct. San Diego County, No. 37-2019-00006221-CU-BC-CTL): ROA No. 1 (original complaint, filed February 1, 2019); ROA No. 25 (papers in support of motion for entry of judgment, filed October 31, 2019), excluding declaration of counsel and exhibits; ROA No. 30 (papers in opposition to motion for entry of judgment, filed February 3, 2020), excluding declaration of counsel and exhibits; ROA No. 35 (minute order, filed February 21, 2020); ROA No. 40 (original judgment, filed March 2, 2020); ROA No. 394 (remittitur with opinion of the Court of Appeal, filed October 14, 2021); and ROA No. 436 (amended judgment, filed February 1, 2022). We take judicial notice of these seven documents on our own motion, and we deny Fusion's motion to augment the record with the following 22 documents on file with the superior court in the Mukesh Lawsuit: ROA Nos. 1, 10, 11, 16, 25, 30-31, 33-35, 37-38, 40, 49, 61, 92, 95, 132, 143, 154, 186, 394.

Then, a few weeks after having entered into the settlement agreement with Mukesh, Fusion entered into a *second* settlement agreement (the Vishal Settlement Agreement) to avoid litigation with Vishal. But the Vishal Settlement Agreement did not put an end to the disputes between Vishal and Fusion; and Vishal then initiated their *own* lawsuit against Fusion (the Vishal Lawsuit).

The two settlement agreements were alike in some respects. For example, each included Fusion and a member of the Patel family among its parties, and each referred to shares of stock in Fusion and to loans made to Fusion. But they differed in other respects. For instance, Vishal was neither a party to nor mentioned in the Mukesh Settlement Agreement. Nor was Mukesh a party to or mentioned in the Vishal Settlement Agreement. And whereas the Vishal Settlement Agreement consisted of 14 recitals plus 32 separately enumerated provisions spanning nine pages of printed text, the Mukesh Settlement Agreement included no recitals and consisted of just seven separately enumerated provisions that spanned only three pages of mostly handwritten text.[2]

Among aspects of the Vishal Settlement Agreement that did not have an analog in the provisions of the Mukesh Settlement Agreement was a recital that appears to have been intended to furnish Fusion some measure of comfort regarding the attribution of payments that Fusion had received from

---

[2] The brevity and informality of the Mukesh Settlement Agreement is attributable in part to the fact that it was executed with an expectation that "a long-form settlement agreement" would supersede it. In anticipation of the possibility that the parties might not be able to agree on a more detailed form to supersede it, however, the Mukesh Settlement Agreement also provided that "this settlement agreement is binding and enforceable even if a long-form settlement agreement is not executed."

or through an entity named ARMPVC Investment LLC (ARMPVC).[3]  That recital read in its entirety as follows:

> "WHEREAS, Vishal will provide documentation from the other members of ARMPVC Investment LLC stating that the contribution to ARMPVC Investment LLC is accurately represented and that the other members of ARMPVC agree that the contribution to Fusion is equivalent to that made to ARMPVC Investment LLC.  The document produced by Vishal's counsel is considered sufficient."

We will refrain from speculating as to the precise meaning of this recital.  So, too, will we refrain from relying in any way on Vishal's assertion that "[t]he acronym ARMPVC stands for the first initials of three couples" comprised of "Andy Patel and his wife (thus, A and R), Mukesh Patel and his wife (thus, M and P), and Vishal Patel (the Plaintiff herein) and his wife (thus, V and C)."[4]

We will, however, note that, somewhere along the way, Fusion began asserting that a lack of transparency into the affairs of ARMPVC had resulted in uncertainty, at least on the part of Fusion, as to which if any of

---

[3]    ARMPVC is not mentioned in the complaint.  The paragraph quoted is the only reference to it in the Vishal Settlement Agreement.  Neither ARMPVC nor any representative of it was a party to the Vishal Settlement Agreement.

[4]    The evidentiary record on appeal is scant, even when supplemented with the documents as to which we are taking judicial notice.  Thus we have seen no evidence corroborating the quoted assertion.  Nor have we seen evidence (apart from fragmentary indications in settlement agreements) shedding light:  (a) on the purpose, organization, membership, management, capitalization, debt structure, or third-party business dealings of Fusion Hospitality Corporation, ARMPVC, MP1959 Investment, LLC, or V&C Investments, LLC; (b) on who transferred funds to Fusion for what purpose and how; or (c) on the extent to which terms governing transfers of funds to Fusion by one person might have differed from terms governing such transfers by another person.

the funds that had been transferred to it by or through ARMPVC should be deemed to have come from Mukesh versus from Vishal versus from other sources. According to Fusion, this uncertainty was stymying Fusion in its efforts to achieve a consensus as to how payments contemplated to be made under the two settlement agreements should be allocated.

## B. Adjudication of Mukesh Settlement Agreement's Enforceability

After some back and forth with Fusion regarding the allocation issue discussed above, Mukesh filed—in the Mukesh Lawsuit—a motion pursuant to Code of Civil Procedure section 664.6 to enforce the Mukesh Settlement Agreement. Fusion opposed this motion, arguing *inter alia* that that the Mukesh Settlement Agreement was unenforceable because its material terms had not been finalized.

One ground on which Fusion contended the Mukesh Settlement Agreement's material terms had not been finalized involved the allocation issue described above. In support of this contention, Fusion argued: that Mukesh was "taking credit for principal monies contributed not by [Mukesh], but by third parties"; that, until a consensus could be achieved as to who—among Mukesh, Vishal, ARMPVC, and others—should be credited with having made which payments to Fusion, there was a risk that Fusion would overpay Mukesh; and that, absent documentation indicating to whom transfers of funds to Fusion should be attributed, Fusion "cannot reliably complete the transaction and settlement agreement."

Citing the Vishal Settlement Agreement in support of this argument, Fusion further argued:

> "The settlement agreement between [Vishal] and [Fusion] contained terms requiring [Vishal] to provide documentation to [Fusion] to support the breakdown of contributions made to Fusion by 1) V&C [Investments, LLC], and 2) by [Mukesh], through . . . ARMPVC. . . .

5

> These documents needed to clearly state which member had contributed what amount, so there would be no disagreements later, in which one member would accuse Fusion of over-paying one member at the expense of another."

But, Fusion argued, far from generating certainty as to what amounts were attributable to which sources, discrepancies in the documentation supplied to Fusion had served only to generate *un*certainty and suspicion.

A second ground on which Fusion contended the Mukesh Settlement Agreement had not been finalized involved allocation of a different sort—specifically, how payments contemplated to be made by Fusion to various persons under the Mukesh Settlement Agreement should be characterized, as between principal and interest, for tax purposes. In support of this contention, Fusion argued: that the parties to the Mukesh Settlement Agreement had not agreed on such an allocation; that "what amount is principal and what amount is interest . . . [c]learly . . . are material terms"; and that "[w]ithout an agreement on how the payments would be categorized for tax purposes, the agreement would be unenforceable." Furnishing an explanation for why the Mukesh Settlement Agreement did not address this allocation issue, Fusion argued that it was not until after Mukesh made a post-agreement "attempt to pass fraudulent documents as genuine" that "it became clear that the classification of the funds for tax purposes is a necessary and material term of any proposed settlement agreement."

The trial court rejected Fusion's contention that the Mukesh Settlement Agreement had not been finalized and was not enforceable. It ruled that "a contract [had been] formed between the parties in which they agreed to the material terms of a settlement agreement;" and, on the basis of this ruling, it entered judgment in favor of Mukesh and against Fusion.

On appeal, Fusion continued to maintain its position that the Mukesh Settlement Agreement was "too uncertain to be enforceable" (*Patel v. Fusion Hospitality Corporation* (Aug. 12, 2021, D077569, D077726) [nonpub. opn.] (*Patel*)), but on this point a panel of this court agreed with the trial court.[5]

> "As evidence of uncertain and thus unenforceable terms, Fusion states that after entering into the [Mukesh Settlement] Agreement, disputes arose about allocating funds between principal and interest . . . . But after an enforceable contract is entered into, it is not uncommon for parties to disagree about such things. That there is a dispute does not necessarily indicate the [Mukesh Settlement] Agreement is too uncertain; it may simply mean it has been breached."

Hence, the Court of Appeal concluded that the Mukesh Settlement Agreement "is sufficiently certain to be enforced." (*Ibid.*)

Following remittitur, the trial court issued an amended judgment (to correct several line items in the original judgment with which our colleagues on the Court of Appeal had taken issue). No appeal was taken from the amended judgment, and the amended judgment became final.

## C. Adjudication of Vishal Settlement Agreement's Enforceability

After the amended judgment in the Mukesh Lawsuit had become final, Vishal filed—in *this* lawsuit (the Vishal Lawsuit)—a brief, unaccompanied by a motion, that was titled *Plaintiffs' Brief Re Issue Preclusion Addressing Defendants' ARMPVC Defense* (the moving brief). The moving brief did not identify by number which of the 21 affirmative defenses enumerated in Fusion's answer it was intended to target; however, there is only one such

---

[5]     The panel reversed the judgment on a different point. (See *Patel, supra,* D077569, D077726.)

defense that pertains to ARMPVC. That defense states in pertinent part that:

> "[Vishal] breached the [Vishal Settlement Agreement] prior to any alleged breach by [Fusion], and [Fusion was] excused from performance due to [Vishal's] breach. . . .[The Vishal Settlement Agreement] required [Vishal] 'to produce documentation from the other members of ARMPVC Investment LLC stating that the contribution to ARMPVC Investment LLC is accurately represented[.]' [Vishal] did not produce an accurate document. This failure was a material breach of the [Vishal Settlement] Agreement."

In the moving brief, Vishal argued that the doctrine of issue preclusion should operate "to bar [Fusion's] manufactured defense re[garding] the irrelevant entity 'ARMPVC' " because "the so-called ARMPVC defense/issue" was "conclusively and permanently defeated in the companion victim's case" (the Mukesh Lawsuit) and because Vishal Patel and Mukesh Patel both were managers of ARMPVC[6] and thus "had/ha[ve] the exact same interest and position regarding this issue" as one another.

In opposition to this moving brief, Fusion argued: that the ARMPVC issue that was presented in the Vishal Lawsuit was not identical to the ARMPVC issue that had been adjudicated in the Mukesh Lawsuit; that the manner in which the issue had been presented to the trial court was procedurally defective; that "there is no record or evidence to support the relief requested"; and that the phraseology of the above-quoted recital in the Vishal Settlement Agreement was "confusing at best . . . and does not clearly entitle [Vishal] to a determination that there is nothing in the subject contract that can be disputed."

---

6    See fn. 4, *ante*.

Fusion also asserted that enforcement of the Vishal Settlement Agreement *and* the Mukesh Settlement Agreement "would risk . . . double-dipping" because "they're seeking a judgment for the same money that's already been [awarded] in the earlier case." Vishal for their part vehemently denied this assertion, arguing "there's no evidence" that Vishal and Mukesh "are trying to get the same ARMPVC money" because "it's not true."[7]

At the behest of Vishal during oral argument, the trial court treated the matter as a motion for judgment on the pleadings. It then granted the motion and entered judgment for Vishal and against Fusion. Whereupon Fusion timely appealed.

## II.

## DISCUSSION

On appeal, Fusion contends the judgment must be reversed because the ARMPVC issue that it pleaded but was precluded from litigating as a defense in *this* lawsuit differs from the ARMPVC issue that was adjudicated against it in the Mukesh Lawsuit.

### A.    Standard of Appeal

In addressing Fusion's contention, we begin by observing that the type of issue preclusion with which we are presented on this appeal is offensive (as distinguished from defensive) issue preclusion, and that authorities are mixed as to the appropriate standard under which decisions premised on this type of issue preclusion should be reviewed. (*Roos v. Red* (2005) 130 Cal.App.4th 870, 878.) Some authorities "suggest[] the appellate court should give deference to the lower court's decision" as to the preclusive effect to be accorded to an issue adjudicated in a different lawsuit. (*Ibid.*) Other authorities indicate such a decision should be reviewed de novo. (*Ibid.*

---

7    See fn. 4, *ante*.

9

[concluding de novo review is the "predominate view"].) Additionally, a trial court's entry of judgment on the pleadings is reviewed de novo. (*Alameda County Waste Management Authority v. Waste Connections US, Inc.* (2021) 67 Cal.App.5th 1162, 1173.) But we need not examine differences among potentially applicable standards of review on this appeal because, *irrespective* of the standard to be applied, we conclude (for reasons discussed in the next section of this opinion) that the trial court erred in precluding Fusion from litigating its ARMPVC defense in this case.

## B.     Issue Preclusion Analysis

Issue preclusion, also known as collateral estoppel, is a doctrine that "precludes relitigation of issues argued and decided in prior proceedings." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341; accord *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) For the doctrine to apply, "five 'threshold requirements [must be] fulfilled.' " (*Thompson v. Crestbrook Ins. Co.* (2022) 81 Cal.App.5th 115, 124.)

> "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding."

(*Lucido, supra*, at p. 341; accord *Thompson, supra*, at p. 124.) The burden of establishing these five requirements for the application of issue preclusion is borne by the party asserting issue preclusion. (*Lucido,* at p. 341.)

Here, we conclude that Vishal cannot establish requirement one, because, simply stated, the ARMPVC issue that Vishal seeks to prevent

10

Fusion from litigating in this lawsuit is not identical to the ARMPVC issue that was decided against Fusion in the Mukesh Lawsuit.[8]

The ARMPVC issue that was decided against Fusion in the Mukesh Lawsuit was whether the Mukesh Settlement Agreement was sufficiently certain to be enforced as is—e.g., without any need for its terms to be modified to address allocation issues. The ARMPVC issue that Vishal seeks to prevent Fusion from litigating in *this* lawsuit, by contrast, is whether performance by Fusion of its obligations under the Vishal Settlement Agreement was excused due to a breach by Vishal of Vishal's obligations under that agreement (the alleged breach being a claimed failure on the part of Vishal to supply Fusion with accurate documentation pertaining to ARMPVC).[9] And though each may be rooted in a concern that was expressed in both lawsuits (i.e., *allocation*), and each may trigger a response that was the same in both lawsuits (i.e., *it's a red herring*), that does not make these entirely different issues identical.[10]

---

[8]  Because the first threshold requirement is not met, we need not address the remaining requirements.

[9]  As noted *ante*, one of the recitals in the Vishal Settlement Agreement references documentation pertaining to ARMPVC. But it does so in a manner that arguably is internally inconsistent or ambiguous, depending on how the phrases "will provide documentation" and "[t]he document produced . . . is . . . sufficient" are construed. Presumably, evidence and arguments bearing on the interpretation/reconciliation of these phrases will be addressed on remand.

[10]  Even if the ARMPVC issue presented in the Vishal Lawsuit were "closer" to the ARMPVC issue presented in the Mukesh Lawsuit—e.g., even if the issue in the Vishal Lawsuit were a matter not of performance having been excused, but rather of terms being sufficient—the issues still would not be identical, because of the ways in which the two agreements themselves are so different.

11

In arriving at this conclusion, we express no view regarding the merits of Fusion's ARMPVC defense; nor do we express a view as to any other defenses (or claims or crossclaims) that may remain in this case. Vishal will still be afforded the opportunity to advocate for enforcement of the Vishal Settlement Agreement—just not in a way that circumvents the need to deal with Fusion's ARMPVC defense on the merits.[11]

## III.

## DISPOSITION

The judgment is reversed. Fusion is entitled to costs on appeal.

KELETY, J.

WE CONCUR:

HUFFMAN, ACTING P. J.

O'ROURKE, J.

---

[11] Vishal expresses several grievances and arguments relating to matters other than issue preclusion and augmentation or sufficiency of the appellate record. (See, e.g., Respondents' Brief, argument nos. IV-VII and IX). Having examined Vishal's presentation regarding these matters, however, we conclude that (to the extent not forfeited or waived) each such matter exceeds the scope of this appeal or is trivial, irrelevant, or not supported by the record with which we have been presented.